**No. 47232.**—Protests 896559–G, etc., of Friedlaender & Co., Inc. (New York).

OLIVER, Presiding Judge: In these suits against the United States, all of which were consolidated for the purpose of trial, plaintiff seeks to recover duties claimed to have been illegally exacted from it on certain articles of glassware imported from France and entered at the port of New York. The merchandise in question was assessed with duty at the rate of 60 percent ad valorem under the provision in paragraph 218 (f) of the Tariff Act of 1930 for

all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any manner, sand-blasted, silvered, stained, or decorated or ornamented in

any manner, whether filled or unfilled, or whether their contents be dutiable or free, * * * .

It is claimed that the articles in question are properly dutiable at but 50 percent ad valorem, either under paragraph 218 (g) or paragraph 230 (d), of the same tariff act. The provisions of paragraph 218 and paragraph 230 under which the claims of plaintiff are made read as follows:

218 (g) Table and kitchen articles and utensils, composed wholly or in chief value of glass, when pressed and unpolished, whether or not decorated or ornamented in any manner or ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), whether filled or unfilled, or whether their contents be dutiable or free, 50 per centum ad valorem.

230 (d) All glass, and manufactures of glass, or of which glass is the component of chief value, except broken glass or glass waste fit only for remanufacture, not specially provided for, 50 per centum ad valorem.

Attached hereto and made a part hereof is schedule A, which sets forth the various items in dispute and the exhibit numbers of the samples which were offered by plaintiff and admitted in evidence. Certain concessions were made by counsel for defendant with respect to each of the articles in question and the conceded facts as they pertain to each item are also shown in the said schedule A.

By virtue of the admissions made by defendant, the line of proof necessary for plaintiff to establish its claim as to the various items in dispute has been limited in varying degrees. We shall therefore first consider the construction to be applied to the provisions of paragraph 218, Tariff Act of 1930, involved herein.

The contention of counsel for plaintiff that paragraph 218 (f) is limited to glass articles if blown or partly blown in the mold or otherwise when colored, cut, engraved, etc., is not supported by any judicial authority. On the contrary, the Court of Customs and Patent Appeals in the case of *United States* v. *Blumenthal & Co.* (13 Ct. Cust. Appls. 407; T. D. 41325) held that this paragraph embraced two general classes of glass articles: (1) those blown or partly blown in the mold or otherwise; and (2) those composed of glass that was cut, colored, engraved, etched, frosted, gilded, or subject to any of the other manufacturing processes contemplated by the statute.

Paragraph 218 (g), invoked by plaintiff, provides for table and kitchen articles and utensils that are pressed and unpolished, whether or not decorated in any manner. As we view it, this subdivision of paragraph 218 carves out of paragraph 218 (f) those kitchen and table articles and utensils which have been pressed and unpolished.

In one respect each of the two paragraphs is the same. Both specifically exclude from classification thereunder any article that has been subjected to a grinding process for a utilitarian purpose, or, as the statute says, "such grinding as is necessary for fitting stoppers or for purposes other than ornamentation."

Summarizing the analysis set forth, it is our judgment that paragraph 218 (f) provides for those glass articles which have been blown in the mold or otherwise, *or* subjected to any of the processes mentioned therein; that paragraph 218 (g) is intended to cover kitchen and table utensils and articles composed of pressed glass and unpolished, whether or not decorated; and that any glass articles, otherwise provided for in either of these paragraphs, if ground for purposes other than ornamentation, become *ipso facto* precluded from classification thereunder. In reaching this conclusion, we are accepting the language as written. A review of the Summary of Tariff Information and the Hearings before the Ways and Means Committee of the House of Representatives reveals nothing to warrant a different construction of these two subdivisions of paragraph 218.

At the trial, counsel for defendant explained the assessment in this case, as follows:

The Government's position, Your Honor, is that this merchandise is simply provided for under paragraph 218 (f), as articles of every description, not specially provided for, colored or decorated glassware.

Thus the question of whether the articles in question were blown or partly blown in the mold or otherwise did not enter into the classification of the collector, and hence is not before us.

Since it has been conceded that items 42–104, 42–105, 42–106, 132–100, 132–101, 47–115, 47–116, 47–101, 132–106, 132–107, and 132–108, represented by exhibits 3, 4, 5, 6, 7, collective exhibits 13, and 14, and exhibits 17, 18, 19, 20, respectively, are made of pressed glass, are unpolished, and not ground for purposes other than ornamentation, the sole question before us, with respect to those items, is whether or not they are kitchen or table articles or utensils within the purview of paragraph 218 (g).

In our recent decision in the case of *Koscherak Bros.* v. *United States*, protests 992025–G, etc. (C. D. 625), we held that the provision for "Table and kitchen articles and utensils" in paragraph 218 (f) is one based on use, and that it embraces articles or utensils composed of the glass provided for therein and which are chiefly used on the table or in the kitchen. The provision for table and kitchen articles and utensils in paragraph 218 (g) is the same as that in paragraph 218 (f), which was under consideration in the *Koscherak Bros.* case, *supra*, and the rule applied in the latter case is equally applicable here, and we so hold.

To establish chief use of the merchandise in question plaintiff offered the testimony of a member of the plaintiff-corporation, whose business is the importation of various glass items having a decorative and a utilitarian value. The witness testified that he buys and sells merchandise for his concern; that he personally selected and purchased the items covered by the shipments in question when he was on a business trip in Europe; and that he also sold this merchandise, both at his place of business and while traveling for his firm. He further testified that he frequently followed these articles into use; and that their chief use is as table articles to serve both utilitarian and decorative purposes. Referring specifically to each of the items under consideration the witness testified as follows: the bowls represented by exhibits 3, 7, 18, 19, and 20 are chiefly used on dining room tables as a centerpiece for holding fruit or flowers; the vases represented by exhibits 4, 5, and 6 are chiefly used on the table, either a living room or dining room table, to hold flowers; the flower holders, collective exhibit 13, are chiefly used "on a dining room table, for the decoration and support and holding of short-stemmed flowers such as pansies"; the candle holders, collective exhibit 14, are used on the dining room table for decorative purposes; and the tray, exhibit 17, is chiefly used on the table, for serving small candies or nuts.

Of the three witnesses called by defendant, two testified concerning the use and character of the instant merchandise. The first witness was the sales manager of Verlys of America, Incorporated, that is engaged in the sale of glass articles manufactured in this country. Concerning the use of the articles as represented by the exhibits just referred to, the witness' testimony is corroborative of that given by plaintiff's witness, particularly with reference to the bowls, vases, and the candy or nut tray. The second witness who testified on behalf of defendant stated that he had 32 years' experience in the sales department of glass manufacturing concerns; and that such experience includes sales of table glass, novelties of all kinds, decorative glass, and industrial glass. His testimony with respect to use of the articles is very limited, consisting merely of a statement that he had

seen bowls like exhibits 3, 7, 18, 19, and 20, used on the table to hold fruit or flowers.

Much of the testimony of both of these witnesses who appeared for defendant was directed toward showing the decorative value of the articles under consideration. An examination of the samples in evidence discloses that all of the articles are highly ornamental and decorative in character. Such fact alone, however, does not remove their tariff classification from a provision based on use, such as we have in this case. In the case of United States v. Ellis Silver Co. (16 Ct. Cust. Appls. 570, T. D. 43297) the court had before it certain articles, including flower and fruit bowls, and bonbon dishes, which were claimed to be dutiable under the provision in paragraph 339 of the tariff act for "Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for." In holding the articles referred to as properly dutiable under that provision, the court said:

The provisions of paragraph 339 are far more comprehensive than those of prior tariff acts. Nevertheless, there is no indication that the Congress intended to extend the scope of the paragraph to include articles other than those having the essential character of utensils. Accordingly, we hold that only such articles as are designed and chiefly used for utilitarian purposes—utensils—are within the provisions for table, household, kitchen, and hospital utensils; and that only such articles as are in the form, generally, of vessels, and are of the character of utensils, designed and used chiefly for utilitarian purposes, are included within the provisions for hollow ware.

Later, this court in the case of Friedlaender Co. v. United States (59 Treas. Dec. 860, T. D. 44796) followed the ruling of the appellate court in the Ellis case, supra, and held certain jardinieres and their accompanying reflectors, as well as metal and alabaster candy containers, to be dutiable under the provision of paragraph 339 referred to. In reaching its conclusion in the Friedlaender Co. case, supra, the court stated:

Following said decision [Ellis case, supra], we hold as matter of law that the present jardinieres and their accompanying reflectors, as well as the metal and alabaster candy containers, are properly covered by said paragraph 339, either as table utensils or as table hollow ware. Such articles would seem to be analogous to the flower and fruit bowls and bonbon dishes which the appellate court classified as within the scope of the paragraph as table hollow ware. We can well conceive that such bowls and bonbon dishes might well be highly ornamental in character, as are the present jardinieres and candy containers, without militating against their usefulness as table utensils.

Although the two cited decisions held that articles that were ornamental in character may be included in the provision in paragraph 339, supra, it will be observed that the court limited to classification thereunder only such merchandise as was chiefly used as table utensils and excluded such articles as were primarily purchased as ornaments and only incidentally used as table utensils. In the Ellis and Friedlaender cases, supra, the provision under consideration related only to table utensils. In the present case, we are concerned with a provision that reads "Table * * * articles and utensils." The addition of the word "articles" in the latter provision is, in our judgment, highly significant. In our opinion, it removes the limitation placed on the analagous provision in paragraph 339 by the Ellis and Friedlaender cases, supra, and broadens the scope of paragraph 218 (g) to include all glass articles of the class therein contemplated chiefly used on the table, whether for ornamental or utilitarian purposes. We can well conceive of certain articles having a very decorative and artistic appearance designed to ornament and embellish a dining room or a living room table. Flower vases, flower holders, and candle holders might be manufactured in a manner to serve such a purpose. If the articles are composed of pressed glass and unpolished, whether decorated or not, and have not been ground for purposes other than orna-

mentation, it is our judgment they are properly classifiable under the provisions of paragraph 218 (g).

We are satisfied from the record before us that the articles hereinabove referred to are chiefly used on the table, and therefore hold those articles, which are set forth in the following tabulations, to be properly dutiable at the rate of 50 per cent ad valorem under the provision in paragraph 218 (g), Tariff Act of 1930, for table articles and utensils, composed wholly or in chief value of glass, pressed and unpolished, whether or not decorated or ornamented in any manner, and not ground for purposes other than ornamentation, as claimed by plaintiff. The following items are included in this conclusion:

| PRO. NO. | INVOICE ITEM | Exhibit No. | DESCRIPTION OF ARTICLE |
|---|---|---|---|
| 896559-G | 42-104 | 3 | BOWL |
| " | 42-105 | 4 | VASE |
| " | 42-106 | 5 | VASE |
| 914094-G | 132-100 | 6 | VASE |
| " | 132-101 | 7 | BOWL |
| 959085-G | 47-115 | Coll. 13 | FLOWER HOLDER |
| " | 47-116 | Coll. 14 | CANDLE HOLDER |
| 993362-G | 47-101 | 17 | TRAY |
| 32245-K | 132-106 | 18 | BOWL |
| " | 132-107 | 19 | BOWL |
| " | 132-108 | 20 | BOWL |

With respect to the remaining items in dispute, plaintiff has the additional burden of establishing that certain processes of manufacture were applied in the production of these articles in order to bring them within paragraph 218 (g), *supra.* Some of these items, to wit, items 47–111 (exhibit 9–B), 47–112 (exhibits 10–A and 10–B), 47–113 (exhibits 11–A and 11–B), 47–114 (exhibits 12–A and 12–B), 132–109, 132–110 all represented by exhibits 20–A and 20–B, 132–114 (exhibit 21), 132–115 (exhibit 22), 132–111, 132–112, and 132–113 (collective illustrative exhibit A), are admittedly composed of pressed glass and unpolished, so as to those items it was incumbent upon plaintiff to show that they were not ground for purposes other than ornamentation. This, it has failed to do. Defendant having conceded that items 47–117 (exhibit 15) and 47–118 (exhibit 16) are composed of pressed glass and not ground for purposes other than ornamentation, plaintiff was required to show that those articles were not polished. This, likewise, it failed to establish. With respect to items 132–102 (exhibit 8) and 47–111 (exhibit 9–A), the burden was on plaintiff to establish that they are unpolished and not ground for purposes other than ornamentation, it being admitted that they are composed of pressed glass. This evidence was not introduced.

The only evidence adduced herein that relates specifically to the method of manufacture of any of the articles under consideration consists of the testimony of three witnesses in France which was taken under three commissions issued out of this court on motion of counsel for plaintiff. Their testimony, however, is limited to six of the items involved in the protests under consideration. Five of these six items, to wit, items 42–104 (exhibit 3), 42–105 (exhibit 4), 42–106 (exhibit 5), 132–100 (exhibit 6), and 132–101 (exhibit 7), are included in the ones which have been hereinabove held to be properly dutiable as claimed by plaintiff. The sixth article covered by the commission referred to is item 132–102 (exhibit 8) and consists of a knife rest. That item is specifically mentioned in the commission executed by the witness, Albert Broido, manager of the "Etablissements Spip" of Paris, France. Having testified that he is personally familiar with the manufacture of this article, the witness stated that it was neither blown nor partly blown but just pressed in a mold and after removal therefrom was frosted. He further testified that the process of grinding is never employed for the purpose of ornamentation but is done only when it is essential. On cross-examination he

was asked whether this article was polished in any manner, and he answered as follows:

When our articles require polishing, they are polished; if they do not require it, they are not. It all depends upon the condition in which the article is when it is removed from the mold.

It will be observed that the witness' answer refers to all merchandise produced by his company. It is no evidence that this item, exhibit 8, is unpolished.

Aside from the evidence contained in the commissions referred to, there is no proof before us that is directed specifically to the process of manufacture of the merchandise at bar. The testimony along this line refers to glass articles generally. It lacks specificity. It is not connected with the particular items under consideration. Counsel for plaintiff evidently recognized the necessity of proof from the foreign manufacturers with respect to the method of production of this merchandise. In addition to the limited character of such testimony contained in the three commissions referred to, the evidence is of a general nature and cannot be applied to the specific item, exhibit 8, under consideration there.

The protests are therefore overruled so far as they apply to items 47–111 (exhibits 9–A and 9–B), 47–112 (exhibits 10–A and 10–B), 47–113, (exhibits 11–A and 11–B), 47–114 (exhibits 12–A and 12–B), 132–109, 132–110 (exhibits 20–A, and 20–B), 132–114 (exhibit 21), 132–115 (exhibit 22), and items 132–111, 132–112, 132–113 (collective illustrative exhibit A), item 132–102 (exhibit 8), and items 47–117 and 47–118 (exhibits 15 and 16).

To the extent indicated, the protests are sustained and judgment will be rendered accordingly.